**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**AES ELECTRICAL d/b/a**
**FREESTATE ELECTRICAL**
**CONSTRUCTION COMPANY**
**13335 Mid Atlantic Blvd.**
**Laurel, MD 20708**

**Plaintiff,**

**v.** **Case No. _______________________**

**LUCY WEBB HAYES NATIONAL**
**TRAINING SCHOOL FOR DEACONESSES**
**AND MISSIONARIES d/b/a SIBLEY**
**MEMORIAL HOSPITAL,**
**5255 Loughboro Road, NW**
**Washington, D.C. 20016**

**SERVE:**
**Barbara Hirsch**
**5255 Loughboro Road, NW**
**Washington, D.C. 20016**
**Registered Agent**

**and**

**TURNER CONSTRUCTION COMPANY**
**375 Hudson Street, 6th Floor**
**New York, NY 10014**

**SERVE:**
**CT Corporation System**
**1015 15th Street, NW, Suite 1000**
**Washington, D.C. 20005**
**Registered Agent**

**and**

**LIBERTY MUTUAL INSURANCE**
**COMPANY**
**175 Berkeley Street**
**Boston, MA 02116**

* * * * * * * * * * * * * * * * * * * * * * * * *

**SERVE:**
**Corporation Service Company**
**1090 Vermont Avenue, N.W.**
**Washington, D.C. 20005**
**Registered Agent**

**and**

**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**
**Construction Services**
**One Tower Square**
**Hartford, CT 06183**

**SERVE:**
**Corporation Service Company**
**1090 Vermont Avenue, N.W.**
**Washington, D.C. 20005**
**Registered Agent**

**and**

**ZURICH AMERICAN INSURANCE COMPANY**
**1299 Zurich Way**
**Schaumburg, IL 60196**

**SERVE:**
**Corporation Service Company**
**1090 Vermont Avenue, N.W.**
**Washington, D.C. 20005**
**Registered Agent**

**and**

**FEDERAL INSURANCE COMPANY**
**15 Mountain View Road**
**Warren, NJ 60196**

**SERVE:**
**CT Corporation System**
**1015 15th Street, NW, Suite 1000**
**Washington, D.C. 20005**
**Registered Agent**

**and**

* * * * * * * * * * * * * * * * * * * * * * * * * * *

**THE CONTINENTAL INSURANCE COMPANY** *
**333 S. Wabash Avenue** *
**Chicago, IL 60604**
*
**SERVE:**
**CT Corporation System** *
**1015 15th Street, NW, Suite 1000**
**Washington, D.C. 20005** *
**Registered Agent**
*
**and**
*
**BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY** *
**100 Federal Street, 20th Floor**
**Boston, MA 02110** *

**SERVE:** *
**Corporation Service Company**
**1090 Vermont Avenue, N.W.** *
**Washington, D.C. 20005**
**Registered Agent** *

**Defendants.** *

* * * * * * * * * * * * *

**COMPLAINT TO ESTABLISH AND ENFORCE MECHANIC'S LIEN AND FOR DAMAGES**

Plaintiff, AES Electrical, Inc. d/b/a Freestate Electrical Construction Company ("Freestate"), by undersigned counsel, for its Complaint to Establish and Enforce Mechanic's Lien to be Enforced as a Judgment against Lucy Webb Hayes National Training School for Deaconesses and Missionaries d/b/a Sibley Memorial Hospital ("Sibley"), and Liberty Mutual Insurance Company ("Liberty"), Travelers Casualty and Surety Company of America ("Travelers"), Zurich American Insurance Company ("Zurich"), Federal Insurance Company ("Federal"), The Continental Insurance Company ("Continental"), and Berkshire Hathaway Specialty Insurance

Company ("Berkshire") (together "Sureties") pursuant to the Mechanic's Lien Undertaking and Order of the Superior Court of the District of Columbia dated April 12, 2017, including the additional defendant required by the mechanic's lien statute, Defendant Turner Construction Company ("Turner"), and for Damages against Turner and, through Turner, Sibley, respectfully states as follows:

**THE PARTIES**

1. Plaintiff, Freestate, is a California corporation maintaining a principal office address of 13335 Mid Atlantic Boulevard, Laurel, Maryland 20708. Plaintiff is properly registered to do business in the District of Columbia and is a licensed electrical contractor in the District of Columbia.

2. Defendant, Sibley, is a District of Columbia non-profit corporation with a principal place of business located at 5255 Loughboro Road, NW, Washington, DC, 20016.

3. Defendant, Sibley, is the owner of the real property at issue in this litigation located in the District of Columbia, and described as Square 1448N, Lot 806 with a common address of 5255 Loughboro Road, NW, Washington, DC, 20016 (the "Property"). The hospital located on the property is known as the Sibley Memorial Hospital.

4. Defendant, Turner, is a New York corporation with a principal place of business located in New York, New York and is registered to do business in the District of Columbia. Turner is engaged in business as a construction general contractor. Turner was the general contractor for the construction project located on the Property at issue in this litigation, located within the District of Columbia.

5. Defendant, Liberty, is a Massachusetts insurance and surety company with a principal place of business located in Boston, Massachusetts and is a registered insurance and surety company in the District of Columbia.

6. Defendant, Travelers, is a Connecticut insurance and surety company with a principal place of business located in Hartford, Connecticut and is a registered insurance and surety company in the District of Columbia.

7. Defendant, Zurich, is a New York insurance and surety company with a principal place of business located in Schaumburg, Illinois and is a registered insurance and surety company in the District of Columbia. Although the bond in question references Fidelity and Deposit Company of Maryland (F&D), upon information and belief, Zurich acquired F&D and the F&D/Zurich bond is therefore in actuality a Zurich bond. In any case, Zurich is jointly and severally liable on the F&D/Zurich bond.

8. Defendant, Federal, is an Indiana insurance and surety company with a principal place of business located in Whitehouse Station, New York and is a registered insurance and surety company in the District of Columbia.

9. Defendant, Continental, is a Pennsylvania insurance and surety company with a principal place of business located in Chicago, Illinois and is a registered insurance and surety company in the District of Columbia.

10. Defendant, Berkshire, is a Nebraska insurance and surety company with a principal place of business located in Omaha, Nebraska and is a registered insurance and surety company in the District of Columbia.

11. Sibley and the Sureties are the parties to a Mechanic's Lien Undertaking filed by Turner on Sibley's behalf in this Court, styled as *Turner Construction Company, For an Order*

*Discharging Certain Property From Mechanic's Lien Claimed by AES Electrical*, Civil Action No. 17-0002464 and accepted by the Superior Court of the District of Columbia in its Order entered on April 12, 2017, pursuant to which both Sibley and the Sureties agreed to pay and satisfy any judgment entered in a suit to enforce the lien in favor of Freestate. A true and correct copy of the Superior Court's April 12, 2017 Order is attached to this Complaint as **Exhibit A** and the Undertaking is attached as **Exhibit B**.

## Jurisdiction

12. This Court has jurisdiction over the claims asserted herein in accordance with 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties to this action and the amount in controversy is in excess of $75,000.00.

13. This Court has personal jurisdiction over Sibley by virtue of its interest in the real property and construction project at issue in this litigation located in the District of Columbia and its agreement in the Undertaking.

14. This Court has personal jurisdiction over the Sureties by virtue of their acting as sureties in the Undertaking related to the project and property at issue in this litigation located in the District of Columbia.

15. This Court has personal jurisdiction over Turner by virtue of it transacting business and contracting to supply services in the District of Columbia.

## Factual Background

16. This case arises from the construction of a new 450,000 square foot hospital facility known as The New Sibley Hospital ("Project") located at the Property.

### I. The Pre-Fabricated Rack Installation System

17. Prior to beginning the Project, in the bid and contracting phase, Freestate significantly lowered its bid to Turner for the electrical scope of work for the Project based upon

Turner's representations regarding the intended use of a more efficient pre-fabricated rack system for the installation of the mechanical, electrical, and plumbing ("MEP") trades' work.

18. The pre-fabricated rack system was designed and intended to reduce installation labor costs and create a more efficient work environment for the MEP trades. Sibley, as owner of the Project, would recognize the benefits of the pre-fabricated rack system in the form of lower costs for the work.

19. It was Freestate's reasonable belief and understanding that Turner had successfully obtained Sibley's and Sibley's design team's approval of Freestate's use of the pre-fabricated rack system.

20. In reliance upon the plan to use the pre-fabricated rack system and Turner having obtained approval from Sibley and its design team, Freestate revised its bid and significantly reduced its price.

21. Freestate's final bid to Turner included a credit of $678,696.00 reflecting the cost savings associated with utilizing the pre-fabricated rack system in performing its electrical work.

22. On or about June 5, 2013, Freestate entered into a subcontract with Turner ("Subcontract") to perform certain electrical work for the Project required of Turner under its contract with Sibley for the construction of the Project ("Prime Contract") (Subcontract and Prime Contract are referred to together hereinafter as "Contract"). A true and correct copy of the Prime Contract is attached as **Exhibit C** and the Subcontract is attached hereto as **Exhibit D.**

23. The Subcontract included the use of the pre-fabricated rack system and the Subcontract sum incorporated the associated credit of $678,696.00.

24. Upon information and belief, the Prime Contract included the use of the pre-fabricated rack system and incorporated Freestate's associated credit of $678,696.00.

25. After Freestate worked for months expending the effort and resources necessary to utilize the pre-fabricated rack system, Sibley and its design team imposed certain requirements upon Freestate that made it impractical and cost prohibitive, if not impossible, for Freestate to use the pre-fabricated rack system.

26. Because of the imposed requirements, Freestate was unable to utilize the pre-fabricated rack system and was forced to perform its work in a manner differing from that contemplated by Turner and Freestate upon entering into and executing the Subcontract, causing Freestate to incur additional unanticipated costs in the amount of at least $678,696.00.

**II. Delays, Inefficiencies, and Impacts**

27. The original Project schedule, upon which Freestate based its bid, contained phased completion dates, the first of which was the delivery of the Emergency Room and Ambulance Entrance, which was originally scheduled to be completed on or before February 23, 2015. The remainder of the overall Project had an original completion date of October 2, 2015.

28. Freestate prosecuted its work on the Project in a good and workmanlike manner, but, during the course of the Project, Freestate encountered numerous scope changes, occurrences of unforeseen periods of delay, interruption, interferences, inefficiencies, and out-of-sequence work, which were not contemplated by Freestate and Turner upon entering into and executing the Contract.

29. The Project's design included multiple design deficiencies and Sibley and its design team repeatedly failed to resolve the deficiencies in a timely manner.

30. During the course of the Project, Sibley and its design team issued over 300 changes that needed to be reviewed and processed by Freestate, many of which required further design development and revisions to those changes before approval.

31. Throughout the Project, Sibley and its design team delayed and interfered with Freestate's ability to effectively plan and prosecute its work in an orderly, logical, and sequential fashion as contemplated by the original schedule it was provided.

32. Sibley and its design team failed to provide timely responses to requests for information and submittals, refused to acknowledge design discrepancies and deficiencies, and failed and refused to cooperate and assist in resolving design discrepancies and deficiencies.

33. The combination of design deficiencies and discrepancies, the issues in resolving design deficiencies and discrepancies, the extremely high number of changes and associated design problems, and the Owner and its design team's ineffectiveness and delay in creating, processing, and approving the necessary documentation, created a domino effect that completely frustrated Freestate's ability to plan, prosecute, sequence, and perform its work in the manner contemplated by Turner and Freestate upon entering into and executing the Contract.

34. The inefficiencies created a nonproductive scenario where Freestate was required to perform its work concurrently in numerous locations rather than sequentially as anticipated, to accelerate its work on the Project and to work in an out-of-sequence and illogical manner in an attempt to meet certain contract milestone dates. Moreover, further changes resulted in the need for additional design clarifications, and the ensuing resolution of design deficiencies and conflicts required numerous rework and "go-backs" in areas in which Freestate had already performed its work.

35. As a direct result of the numerous scope changes, occurrences of unforeseen periods of delay, repeated interference, interruptions, inefficiencies, and out-of-sequence work, Freestate incurred significant unanticipated labor overruns for which it has not been compensated.

36. The numerous scope changes, occurrences of unforeseen periods of delay, repeated interference, interruptions, inefficiencies, and out-of-sequence work required Freestate to remain on the project over a year past the originally planned completion date, requiring it to incur unanticipated additional costs.

37. Freestate fully and properly completed its work, including extra and/or additional work, pursuant to the terms of the Contract notwithstanding the substantial additional costs incurred to do so.

## III. Freestate's Claim for Equitable Adjustment

38. On November 21, 2016, Freestate and Turner entered into a Settlement and Liquidation Agreement ("Liquidation Agreement"). A true and correct copy of the Liquidation Agreement is attached hereto as **Exhibit E.**

39. Pursuant to the Liquidation Agreement, Freestate and Turner agreed that Freestate had an impact/inefficiency claim and performed work outside the scope of the Subcontract on the Project due to changes and design defects for which Sibley was responsible for payment. (Exh. E; Recitals & ¶1).

40. Freestate and Turner acknowledged that Sibley was solely responsible for Freestate's impact/inefficiency claim and its claim for the work performed outside the scope of the Contract on the Project due to changes and design defects and therefore agreed that Freestate and Turner were jointly seeking to hold Sibley liable. (Exh. E; ¶8).

41. Further, Turner affirmatively represented that in resolving its equitable adjustment with Sibley, it did not waive and/or in any way prejudice Freestate's right to pursue its claims against Sibley. (Exh. E; ¶8).

42. Turner also agreed that Freestate's claims were being prosecuted through Turner solely by reason of lack of privity between Freestate and Sibley, who Freestate and Turner agreed

was the ultimately responsible party, and that by reason thereof, Turner acknowledged liability to Freestate for Freestate's claims and liquidated that liability in accordance with the Liquidation Agreement. (Exh. E; ¶8). By virtue of the Liquidation Agreement, Turner has permitted Freestate to "stand in the shoes of Turner" for the pursuit of Freestate's claims against Sibley.

43. By letter dated December 15, 2016, Freestate presented to Turner its Request for Equitable Adjustment ("REA") in the amount of $4,339,304.00 in accordance with the Liquidation Agreement.

44. According to Turner, Turner transmitted Freestate's REA as a pass through claim to Sibley in accordance with the Liquidation Agreement on January 10, 2017. Neither Turner and/or Sibley through Turner have responded and/or asserted a position with respect to Freestate's REA.

45. Pursuant to the terms of the Contract and Liquidation Agreement, Turner and, through Turner, Sibley agreed to make payments to Freestate for its original scope of work, as well as extra and/or additional work, performed in connection with the Project.

46. Freestate properly and timely notified Turner and, through Turner, Sibley of the impact of the numerous scope changes, occurrences of unforeseen periods of delay, repeated interference, interruptions, inefficiencies, and out-of-sequence work, in accordance with the terms of the Contract.

47. Despite Freestate's full, complete, and timely performance of its work under the Contract, Turner and, through Turner, Sibley have failed to properly and timely pay in full the amounts due and owing to Freestate in accordance with the terms of the Contract.

48. Freestate remains unpaid for electrical work performed and labor, material, and services provided on the Project, in the amount of $4,339,304.00 as a result of Freestate being

prevented from using the pre-fabricated rack system, extensive labor overruns, inefficiencies, and impacts, and extended general conditions.

49. The total amount due consists of the following components: (1) the return of $678,696.00 for the credit provided for use of the pre-fabricated rack system; (2) $3,318,900.00 in labor overruns, inefficiency costs, and impacts as the result of numerous scope changes, unforeseen periods of delay, repeated interference, interruptions, inefficiencies, and out-of-sequence work; and (3) $341,708.00 for extended general conditions as a result of unforeseen and unanticipated delay.

50. All conditions precedent to the filing of this action have occurred or have been performed, waived, satisfied, or otherwise excused.

**COUNT I**

**(Establishment and Enforcement of Mechanic's Lien Discharged by the Undertaking)**

51. Freestate restates the foregoing allegations of this Complaint and incorporates the same herein by reference.

52. This is an action in equity on the mechanic's lien of Freestate, which has been discharged by the Undertaking pursuant to the Order of the Superior Court of the District of Columbia dated April 12, 2017 and D.C. Code Section 40-303.18.

53. On December 22, 2016, within the time and in the manner prescribed by statute, Freestate filed and recorded a Notice of Mechanic's Lien in the Office of the Recorder of Deeds for the District of Columbia, the same being recorded at Instrument Number 20166134016 (the "Notice"). A true and accurate copy of the Notice is attached hereto as **Exhibit F** and incorporated herein by reference.

54. The Notice was recorded within 90 days after the completion of the Project, which occurred on or about October 11, 2016.

55. Pursuant to D.C. Code Section 40-301.02 (a) (2), Freestate sent a copy of the Notice to Sibley's resident agent via certified mail on December 22, 2016 at Sibley's address and resident agent's address (as listed on the face of the Notice) (the certified mail tracking information showing that the notice sent by certified mail was delivered is attached hereto as **Exhibit G**) and after the certified mail green card receipt was not returned (although the tracking information from the United States Postal Service showed that the package was delivered), was delivered by hand delivery to Sibley's authorized agent of its resident agent and posted at the front entrance of the Property on January 10, 2017 (a copy of the affidavits of service attesting to the hand delivery via process server and posting at the property are attached as **Exhibits H** and **I** respectively).

56. Sibley and Turner are indebted to Freestate in the amount of $4,339,304.00 for labor and materials supplied to the Project and the Property by Freestate.

57. Sibley and Turner have failed to pay the $4,339,304.00 due for labor and materials supplied to the Project and the Property by Freestate.

58. This Complaint is filed in the manner and within the time prescribed by statute.

WHEREFORE, AES Electrical, Inc. d/b/a Freestate Electrical Service Company respectfully requests this Court Order the following:

a. Enter judgment in favor of AES Electrical, Inc. d/b/a Freestate Electrical Service Company as to the validity and amount of AES Electrical, Inc. d/b/a Freestate Electrical Service Company's mechanic's lien;

b. In lieu of selling the property to satisfy the lien that would otherwise be the method of recovery under the mechanic's lien statute, and in accordance with the Undertaking and April 12, 2017 Order of the Superior Court of the District of Columbia approving the Undertaking, enter judgment in favor of AES Electrical, Inc. d/b/a Freestate Electrical Service Company in the amount of $4,339,304.00 plus costs and interest against Lucy Webb Hayes National Training School for Deaconesses and Missionaries d/b/a Sibley Memorial Hospital, Liberty Mutual Insurance Company, Travelers Casualty and Surety Company of America, Zurich American Insurance Company, Federal Insurance Company, The Continental Insurance Company, and Berkshire Hathaway Specialty Insurance Company; and

c. Grant such other and further relief as the Court may deem just and equitable.

**Count II**

**(Breach of Contract Against Turner and, through Turner, Sibley – Rack Credit)**

59. Freestate restates the foregoing allegations set forth in Paragraphs 1-50 of this Complaint and incorporates the same herein by reference.

60. Freestate asserts this count against Turner and, alternatively, through Turner, against Sibley pursuant to the Liquidation Agreement to the extent the Court determines Freestate is entitled to stand in the shoes of Turner for purposes of pursuing Freestate's claim against Sibley.

61. This Count is governed by Maryland law pursuant to the terms of the Prime Contract, which have been flowed down to Freestate's Subcontract with Turner.

62. As set forth above, Freestate's use of a pre-fabricated rack system was contemplated by Turner and Freestate upon entering into and executing the Subcontract.

63. The Subcontract included the use of the pre-fabricated rack system in Freestate's scope of work and the Subcontract sum incorporated the associated credit of $678,696.00.

64. Upon information and belief, the Prime Contract included the use of the pre-fabricated rack system and incorporated Freestate's associated credit of $678,696.00.

65. Freestate provided the credit of $678,696.00, entered into the Subcontract, and proceeded in the execution of its work on the Project in reliance upon the contemplated use of the pre-fabricated rack system and the associated promised efficiency.

66. Because of requirements imposed by Sibley and Sibley's design team, Freestate was unable to utilize the pre-fabricated rack system and was forced to perform its work in a manner differing from that promised by Turner and contemplated by Turner and Freestate upon entering into and executing the Subcontract and, upon information and belief, by Turner and Sibley in entering into the Prime Contract.

67. As a result, Freestate did not gain the benefit of increased efficiency and associated costs savings promised through the use of the pre-fabricated rack system, which served as the basis for the $678,696.00 credit provided to Turner and, through Turner, Sibley.

68. Despite Sibley and its design team preventing Freestate's use of the pre-fabricated rack system in the manner contemplated by Turner and Freestate upon entering and executing the Subcontract and, upon information and belief, by Turner and Sibley in entering into the Prime Contract, Turner and, through Turner, Sibley have unjustly refused to pay for the additional unanticipated costs incurred by Freestate in the amount of at least $678,696.00.

69. Turner's and, through Turner, Sibley's failure and refusal to pay the additional costs in the amount of $678,696.00 constitutes a breach of the Contract, including the express and implied duties, agreements, and obligations contained therein and arising therefrom.

70. As a direct result of Turner's and, through Turner, Sibley's breach of the Contract, Freestate has suffered damages in the amount of at least $678,696.00.

WHEREFORE, AES Electrical, Inc. d/b/a Freestate Electrical Service Company respectfully requests this Court enter judgment in favor of AES Electrical, Inc. d/b/a Freestate Electrical Service Company against Turner Construction Company and/or alternately through Turner Construction Company against Lucy Webb Hayes National Training School for Deaconesses and Missionaries d/b/a Sibley Memorial Hospital pursuant to its Count II in the amount of at least $678,696.00, together with interest, costs, and attorney's fees as allowed by law and grant such other and further relief as the Court may deem just and equitable.

**Count III**

**(Breach of Contract Against Turner and, through Turner, Sibley – Delay, Inefficiencies, and Impact Claim)**

71. Freestate restates the foregoing allegations set forth in Paragraphs 1-50 of this Complaint and incorporates the same herein by reference.

72. Freestate asserts this count against Turner and, alternatively, through Turner, against Sibley pursuant to the Liquidation Agreement to the extent the Court determines Freestate is entitled to stand in the shoes of Turner for purposes of pursuing Freestate's claim against Sibley.

73. This Count is governed by Maryland law pursuant to the terms of the Prime Contract, which have been flowed down to Freestate's Subcontract with Turner.

74. During Freestate's prosecution of work on the Project, Freestate encountered numerous scope changes, occurrences of unforeseen periods of delay, interference, interruption, inefficiencies, and out-of-sequence work, which were not contemplated by Freestate and Turner upon entering into and executing the Subcontract and, upon information and belief, by Turner and Sibley in entering into the Prime Contract.

75. Freestate incurred unanticipated additional labor costs, expenses, and impacts related to the numerous scope changes, occurrences of unforeseen periods of delay, interference, interruption, inefficiencies, and out-of-sequence work.

76. Freestate properly and timely notified Turner, and, through Turner, Sibley of the changed conditions, delays, interferences, interruption, inefficiencies, out-of-sequence work, and impacts, pursuant to the terms of the Contract.

77. Despite proper and timely notice, Turner and, through Turner, Sibley have failed and refused to remit payment to Freestate for the additional labor costs, expenses, and impacts incurred to complete its work on the Project.

78. Turner's and, through Turner, Sibley's failure and refusal to remit payment for the additional labor costs, expenses, and impacts incurred constitute a breach of the Contract, including the express and implied duties, agreements, and obligations contained therein and arising therefrom.

79. As a direct result of Turner's and, through Turner, Sibley's breach of the Contract, Freestate has been damaged in the amount of at least $3,318,900.00.

WHEREFORE, AES Electrical, Inc. d/b/a Freestate Electrical Service Company respectfully requests this Court enter judgment in favor of AES Electrical, Inc. d/b/a Freestate Electrical Service Company against Turner Construction Company and/or alternately through Turner Construction Company against Lucy Webb Hayes National Training School for Deaconesses and Missionaries d/b/a Sibley Memorial Hospital pursuant to Count III in the amount of at least $3,318,900.00, together with interest, costs, and attorney's fees as allowed by law and grant such other and further relief as the Court may deem just and equitable.

**Count IV**

**(Breach of Contract Against Turner, and through Turner, Sibley – Extended General Conditions)**

80. Freestate restates the foregoing allegations set forth in Paragraphs 1-50 of this Complaint and incorporates the same herein by reference.

81. Freestate asserts this count against Turner and, alternatively, through Turner, against Sibley pursuant to the Liquidation Agreement to the extent the Court determines Freestate is entitled to stand in the shoes of Turner for purposes of pursuing Freestate's claim against Sibley.

82. This Count is governed by Maryland law pursuant to the terms of the Prime Contract, which have been flowed down to Freestate's Subcontract with Turner.

83. During Freestate's execution of its work on the Project, Freestate experienced numerous unforeseen and unanticipated delays which significantly extended the overall Project schedule.

84. As a direct result of the delays and extended schedule, Freestate has incurred unanticipated additional field and home office overhead costs, as well as unanticipated equipment storage and temporary power costs.

85. Freestate properly and timely notified Turner and, through Turner, Sibley of the changed conditions and impacts, pursuant to the terms of the Contract.

86. Despite proper and timely notice, Turner and, through Turner, Sibley have failed and refused to remit payment to Freestate for the unanticipated additional field and home office overhead costs, equipment storage costs, and temporary power costs.

87. Turner's and, through Turner, Sibley's failure and refusal to remit payment for the unanticipated additional field and home office overhead costs, equipment storage costs, and

temporary power costs constitute a breach of the Contract, including the express and implied duties, agreements, and obligations contained therein and arising therefrom.

88. As a direct result of Turner's and, through Turner, Sibley's breach of the Contract, Freestate has been damaged in the amount of at least $341,708.00.

WHEREFORE, AES Electrical, Inc. d/b/a Freestate Electrical Service Company respectfully requests this Court enter judgment in favor of AES Electrical, Inc. d/b/a Freestate Electrical Service Company against Turner Construction Company and/or alternately through Turner Construction Company against Lucy Webb Hayes National Training School for Deaconesses and Missionaries d/b/a Sibley Memorial Hospital pursuant to Count IV in the amount of at least $341,708.00, together with interest, costs, and attorney's fees as allowed by law and grant such other and further relief as the Court may deem just and equitable.

Respectfully submitted,

BY: /s/ Roger C. Jones, Esquire

Roger C. Jones, D.C. Bar #994634
Nicole L. Campbell, D.C. Bar #498490
Huddles Jones Sorteberg & Dachille, P.C.
10211 Wincopin Circle, Suite 200
Columbia, Maryland 21044
(410) 720-0072 (Telephone)
(410) 720-0329 (Facsimile)
jones@constructionlaw.com
campbell@constructionlaw.com

Attorneys for Plaintiff,
AES Electrical, Inc. d/b/a
Freestate Electrical Construction Company